**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: August 19 2015

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. **15-31033** |
| | ) | |
| **William J. Brown d/b/a Global Repossession aka Willima Joseph Brown, Sr.,** | ) ) | Chapter 13 |
| | ) | |
| Debtor(s) | ) | JUDGE MARY ANN WHIPPLE |

### ORDER

The court held a further and final hearing on August 11, 2015, on the Motion for Relief from Stay and Abandonment, [Doc. # 27] ("Motion"), filed by William J. Zeisler, who is deceased, and Raetta Zeisler ("the Zeislers" or "Movants"). Debtor, Attorney for Debtor, Raetta Zeisler and Attorney for the Zeislers appeared in person at the hearing. The Chapter 13 Trustee appeared by telephone at the beginning of the hearing to report on the status of Debtor's plan payments to date.

The district court has jurisdiction over this Chapter 13 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings involving motions to terminate, annul, or modify the automatic stay are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(G).

Debtor and the Zeislers entered into an Ohio Land Installment Contract for residential real property located at 21151 Fostoria Road, Luckey, Wood County, Ohio ("the Property"). Under the land contract, the Zeislers sold Debtor the Property for $99,000.00. Debtor paid $7,000 down and agreed to pay the balance in monthly payments of $687.37 for ten years, through August 30, 2019, subject to extension of the term.

The contract is dated June 16, 2009, during the depth of the recession. Other terms include an additional monthly payment due from Debtor for real estate taxes and insurance, and a late payment penalty of 5% of outstanding unpaid monthly amounts due. The Property is also encumbered by a mortgage in favor of Huntington National Bank.

The parties agree on little and are bitter toward one another. They disagree on how to interpret certain events, the value of the Property, whether Debtor has made any material improvements to the Property and on the amount of both the deficiency and the balance due under the contract. For example, Debtor asserts that he bartered $2,500.00 in auto repair services with Mr. Zeisler in lieu of making monthly contract payments. Movants dispute that this had anything to do with the Property. Movants also continue to hold $2,500.00 in a so-called suspense account that has not been applied to the debt. Ultimately, however, the court need not resolve all of these disagreements to decide the Motion based on facts that are not in dispute.

Movants timely filed their proof of claim and have already amended it twice, asserting most recently a pre-petition contract arrearage of $15,047.04 as of the case filing date on April 3, 2015, and an additional post-petition arrearage of $3,761.76, for a total amount claimed on default of $18,808.80. [Cred. Ex. # 3]. These figures do not account in any fashion for the $2,500.00 held in "suspense." [*See* Cred. Ex. ## 3, (unnumbered p. 4), 5]. The total balance due under the contract still exceeds $96,000 according to Movants. [Cred. Ex. # 3]. Debtor has not objected to any version of the proof of claim filed by Movants, so it is presently deemed allowed. 11 U.S.C. § 502(a).

Debtor acknowledges that he was not always on time with his payments under the land contract, sometimes making partial payments and then trying to catch up. He attributes this to the nature of his work, which is commission based and not always predictable. (In his testimony, he came close to walking himself out of Chapter 13 eligibility, which requires that a debtor be an "individual with regular income," defined as one whose "income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13...." 11 U.S.C. §§ 109(e), 101(30)). Debtor asserts that this payment pattern was generally OK with the Zeislers, but Raetta Zeisler disagrees that it was ever anything other than problematic. She was and remains generally responsible for the bookkeeping under the contract. The Zeislers depend on the cash flow from Debtor's contract payments to service the Huntington National Bank mortgage debt on the Property. Without them, Raetta Zeisler has been drawing on a home equity line of credit on her own home to service the mortgage debt on the Property, including taxes and insurance, a clear and understandable strain on her given her advanced age (based on the court's personal observation of her)

and personal circumstances now as a widow. She candidly admits that she just wants to be done with Debtor, recover possession of the property and get it sold to payoff the Huntington National Bank mortgage so as to reduce her own risk and exposure on her own home. Debtor, too, needs to have the Huntington National Bank mortgage, insurance and real property taxes paid, absent which his investment is equally at risk. The parties have at least that ultimate goal in common.

In the spring of 2014, the Zeislers declared a default under the land contract, racing the circumstances under Ohio law after which they would be required to commence a full-blown judicial foreclosure action to recover the Property instead of proceeding with a simpler land contract forfeiture action. *Compare* Ohio Rev. Code Ann. § 5313.05 *and* Ohio Rev. Code Ann. § 5313.06, *with* Ohio Rev. Code Ann. § 5313.07. On July 1, 2014, they filed their Complaint for Forfeiture of Land Installment Contract and for Possession of the Premises in the Perrysburg, Ohio Municipal Court. [Cred. Ex. 4]. That action was interrupted by Debtor's Chapter 7 case, filed on November 6, 2014, in which the Zeislers were granted relief from stay and abandonment on December 30, 2014, and then the filing of this Chapter 13 case on April 3, 2015. Debtor received a Chapter 7 discharge and is not eligible for a Chapter 13 discharge in this case.

Debtor timely filed his plan in this case on the date it was commenced, on April 3, 2015. [Doc. # 4]. He then filed a proposed amended plan on June 15, 2015. [Doc. # 33]. The confirmation hearing has been adjourned to August 25, 2015.

Debtor's original plan proposed monthly pre-confirmation payments of $404.00 to the Chapter 13 Trustee, increasing to $1,369.00 upon confirmation. Prior to confirmation, his original plan also proposed that he make monthly adequate protection payments of $867.77 directly to Movants, which is the monthly contract payment amount, including for taxes and insurance. Post-confirmation contract payments to the Zeislers were then to be made by the Trustee as a conduit from Debtor, [*Id*., ¶ 4], with the Trustee also curing the default.

In his amended plan, Debtor instead specifies that, in addition to curing the pre-petition arrearage through the plan, the Chapter 13 Trustee will be responsible for making all post-petition payments due to the Zeislers on the contract, [Doc. # 33, ¶ 1], starting with the first payment due after filing. This change likely occurred because Debtor had failed to make any adequate protection payments directly to Movants prior to filing his proposed amended plan. Thus, the amended plan requires only that Debtor make monthly plan payments of $1,369.00 to the Trustee.

The proposed duration of both the original and amended plan is the maximum of 60 months, during

3

which time the contract becomes due in full unless extended according to its terms. Both plans propose to cure the default and assume the land contract with the Zeislers. *See In re Ravenswood Apartments, LTD*., 338 BR 307 (B.A.P. 6th Cir. 2006)(land contract under Ohio common and statutory law is an executory contract subject to assumption or rejection in bankruptcy, regardless whether the applicable state law remedy on default is forfeiture or foreclosure).

At the hearing, the Chapter 13 Trustee reported that she had received just one payment from Debtor, on June 30, 2015. That payment was in the amount of $2,300.00. Under the statute, Debtor was required to commence making his plan payments "not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier," 11 U.S.C. § 1326(a)(1). Both the case and his original plan having been filed on April 3, 2015, Debtor was required by the statute to commence plan payments by May 3, 2015. As of the hearing on the Motion, Debtor should have made four plan payments of $1,369.00 to the Chapter 13 Trustee, or a total of $5,476.00, instead of just the $2,300.00 paid in one lump sum. At the hearing, however, Debtor brought with him a bank check from Fifth Third Bank in the total amount of $3,400.00. That amount would put him current on his plan funding, with a little bit ahead on account of the $1,369.00 payment due in September 2015.

Section 362 of the Bankruptcy Code provides that a bankruptcy petition "operates as a stay, applicable to all entities," of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Section 362(d) directs the court to grant relief from the stay (1) "for cause, including the lack of adequate protection of an interest in property of [the moving party]" or (2) "with respect to a stay of an act against property under [§ 362(a)]," if the debtor has no equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(1) and (2). Parts (d)(1) and (d)(2) are in the alternative, so Movants need only be entitled to relief under one of them for the court to grant the Motion. In turn, however, part (d)(2) is in the conjunctive, so both prongs (A) and (B) must be established in order for the court to grant the Motion under § 362(d)(2).

Congress set forth burdens of proof applicable to a motion for relief from the automatic stay in § 362(g). 11 U.S.C. § 362(g). Specifically, the party seeking relief, in this case Movants, have the burden of proof on the element of Debtor's lack of equity in the Collateral and the party opposing relief, in this case Debtor, has the burden of proof on all other issues.

Notwithstanding these statutorily articulated burdens, a party seeking relief from stay still has the burden of going forward to establish a *prima facie* right to the relief requested before the burden shifts to

4

the debtor to disprove that cause exists for relief from stay. This burden of going forward encompasses both statutory and jurisprudential standing requirements, with relief under § 362(d) reserved by the statute to "a party in interest." *In re Village Rathskeller, Inc.*, 147 B.R. 665, 668-71 (Bankr. S.D.N.Y. 1992); *In re Comcoach Corp.*, 698 F.2d 571, 573-74 (2d Cir. 1983); *In re Lakeside I. Corp.*, 104 B.R. 468, 471-72 (Bankr. M.D. Fla. 1989). In the context of a secured creditor, or, in the court's view, a creditor with a claimed interest in property that it seeks relief to realize upon, this initial burden of going forward requires the movant to show: (1) the amount of the debt owing to movant by debtor, (2) that movant holds a perfected security interest in property of the estate, and (3) a showing of the right to relief it seeks under either §§ 362(d)(1) or (d)(2). *In re Planned Systems, Inc.*, 78 B.R. 852, 860 (Bankr. S.D. Ohio 1987); *In re Elmira Litho, Inc.*, 174 B.R. 892, 900-902 (Bankr. S.D.N.Y. 1994). Where a secured creditor is seeking relief from stay to realize on lien rights, the Sixth Circuit has decided that the creditor must also prove the validity of its security interest in the property at issue, *Grant, Konvalinka & Harrison P.C. v. Sill (In re McKenzie)*, 737 F.3d 1034, 1039-40 (6th Cir. 2013).

Movants seek relief from stay and abandonment to continue and complete their pending land contract forfeiture action in the Perrysburg, Ohio Municipal Court. They assert as grounds for relief both cause, including a lack of adequate protection, under § 362(d)(1), and a lack of equity in the property and its lack of necessity to an effective reorganization, under § 362(d)(2).

At the hearing, Raetta Zeisler and adult son John Zeisler testified, as did Debtor. The court finds that her testimony and the admitted exhibits, including a copy of the recorded land contract attached to the state court complaint and the deemed allowed proof of claim, [Creds. Exs. ## 3,4], establish an interest in property, a debt and an alleged default and arrearage. Movants' evidence also made a prima facie showing of grounds for relief from stay. The court finds that Movants have established their standing as having an interest in the Property, both for purposes of meeting their burden of going forward and for the purpose of meeting their analogous burden of proof under *Grant, Konvalinka & Harrison P.C.* [1]

---

[1] While Movants have advanced a *prima facie* case for relief, the court will not and need not determine the amount of the debt and the arrearage to decide the Motion, leaving that to the claims process should Debtor determine to object. Movants have shown that there is a debt owed to them by Debtor, and that Debtor defaulted in his obligations to Movants. In so deciding, however, the court does not find (albeit *dicta* in this procedural context) that Debtor is entitled to any credit for the barter transaction against the debt or the arrearage. Debtor's testimony lacked specificity and documentation of the services provided, the amount or value thereof and timing that robbed the transaction of credibility as related to a claimed credit against his obligations under the land contract. Moreover, while the court takes the $2,500.00 on hand "in suspense" into consideration in deciding that conditioning the automatic stay is the appropriate form of

Because the Bankruptcy Code does not define "cause" under § 362(d)(1), courts must determine whether relief is appropriate through a fact-intensive inquiry on a case-by-case basis. *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 737 (6th Cir. 1994); *In re Shivshankar P'ship, LLC*, 517 B.R. 812, 817 (Bankr. E.D. Tenn. 2014) (citations omitted); *see also Mooney v. Gill*, 310 B.R. 543, 546-47 (N.D. Tex. 2002) ("The bankruptcy court must balance the hardships of the parties and base a decision on whether to modify the automatic stay on the degree of hardship involved and the goals of the Bankruptcy Code. Cause is an intentionally broad and flexible concept, made so in order to permit the courts to respond in equity to inherently fact-sensitive situations." (citations and quotation marks omitted)). While testimony at the hearing focused mostly on grounds for relief under § 362(d)(2), and the parties' wildly different views of the value of the property, the court finds that Movants have shown cause for relief under § 362(d)(1).[2]

Specifically, the court finds that the cause shown is that Debtor has failed to date to comply timely with his obligations under either version of his proposed plan and the statute. Initially, he proposed to make adequate protection payments directly to Movants. He failed to make them and then amended his proposed plan to remove that obligation, which the court believes was done precisely because he had not made them and to buy himself time to get a lump sum of plan payments directly to the Trustee. At that, no money flowed to the Trustee for nearly three months after commencement of the case, contrary to the statutory requirement of § 1326(a)(1). Moreover, given Raetta Zeisler's unique position of having to fund shortfalls in Debtor's cash flow for servicing of the Huntington National Bank mortgage debt by dipping into the equity on her own home, the court finds that Debtor's failure to make plan payments timely as proposed to date is sufficiently material to constitute cause for relief from stay in this case, particularly when considered in light of Debtor's recent prior Chapter 7 case.

Movants having met their burden of going forward to establish cause for relief from stay under §

---

relief instead of immediate termination, the court does not and need not decide in this context how those funds are to be treated between the parties.

[2]Regardless of the value of the Property and whether Debtor has equity in it, which is Movants' burden of both going forward and proof under § 362(d)(2), Debtor has shown at this time with his proposed amended plan a reasonable prospect of a successful reorganization under Chapter 13 for which the Property is necessary, on the basis of the $3,400.00 in certified funds brought to the hearing. Absent those certified funds to bring the proposed plan current, Debtor would not have met his burden of so showing under § 362(d)(2)(B). But as both prongs of § 362(d)(2) must be met for relief to be granted thereunder, the court finds that Movants are not entitled to relief under § 362(d)(2), regardless of whether Debtor has equity in the property.

362(d)(1), Debtor did not disprove that his plan performance shortcomings did not constitute "cause" for relief from stay under § 362(d)(1).  Debtor's testimony is best summed up as it should be OK to pay when he can, because of his income earning circumstances, not when required by either his plan or the statute. (Hence, his walk close to the line of lack of eligibility to be a Chapter 13 debtor.) This was the same pattern Debtor adopted and clearly thought was OK in making payments to Movants on a pre-petition basis.  But whether that modus operandi as to Movants was ever OK with Movants and outside of bankruptcy, *but see Keene v. Schnetz*, 13 Ohio App.3d 87, 468 N.E.2d 125 (Ohio Ct. App. 1983)(vendor's past acceptance of vendee's late payments does not constitute a waiver of vendor's statutory right to initiate forfeiture proceedings), it is not OK in Chapter 13, as the court made clear to Debtor both at this hearing and at the prior preliminary hearing.

That the court finds Movants to be entitled to relief under § 362(d)(1) does not resolve the Motion. The last issue is what the appropriate form of relief is. The statute provides that relief may consist of "terminating, annulling, modifying, or conditioning" the stay. 11 U.S.C. § 362(d). Movants want the stay terminated, now. Instead the court finds that conditioning continuation of the stay is the appropriate relief. Debtor brought certified funds of $3,400.00 to the hearing. That cures the plan funding shortfall, with an advance on the September plan payment. The amount the Trustee will have on hand, including the $3,400.00 bank check, will fund the conduit for post-petition payments to the Zeislers if the plan is confirmed on August 25, 2015, with confirmation having been continued precisely to address the plan funding shortfall. Except for the Trustee's commission, those funds will flow to Movants upon confirmation. As to the Property itself, regardless of its current value, there is no evidence that it is decreasing in value since imposition of the stay. John Zeisler had access to the Property and did not note any concerns about the maintenance or condition of what he saw.  Moreover, Movants have on hand $2,500.00 "in suspense" that has never been applied to the debt or used to make payments to Huntington National Bank on the underlying mortgage. Thus, immediate termination of the stay is neither necessary nor appropriate now. The conditions and modifications set forth below are intended to ameliorate the risk of future plan non-performance that has been shown in the case to date with Debtor's late payments and as shown by Debtor's own testimony. If Debtor cannot make regular and routine monthly Chapter 13 plan payments and keep the plan funded as required both by its terms and the statute, then Movants should be entitled to have the stay terminated to move forward with their rights under state law, whatever those might be at the time.

Based on the foregoing reasons, and as otherwise stated on the record by the court at the hearings, good cause appearing,

**IT IS THEREFORE ORDERED** that the Motion [Doc. # 30] shall be, and it hereby is, conditionally **GRANTED**, only insofar as the court hereby conditions and modifies the continuation of the balance of the automatic stay, as follows:

1. Debtor must immediately transmit to the Standing Chapter 13 Trustee the Fifth Third Bank check for $3,400.00, which funds the Trustee is authorized to accept over the counter instead of through the lock box. If those funds are not received by the Trustee on or before August 24, 2015, an Event of Default will have occurred under this order, which event will not be subject to cure by Debtor and will result in immediate termination of the automatic stay.

2. The filing by the Standing Chapter 13 Trustee of a Notice of Inability to Make Conduit Payment under Debtor's plan shall be an Event of Default under this order.

3. Unless Debtor cures an Event of Default under numbered paragraph two of this order and the plan funding shortfall preventing the Chapter 13 Trustee from making the specified conduit payment(s) to Movants within 15 days of filing of the Trustee's Notice of Inability, Movants may file and serve an Affidavit attesting to the default and Debtor's failure to cure the default and seeking immediate termination of the balance of the automatic stay by the court without further notice or opportunity for hearing.

4. The cure process set forth above in numbered paragraph three is limited to three times. If a fourth Notice of Inability to Make Conduit Payment is filed by the Trustee, an Event of Default will have occurred under this order, which Event of Default will not be subject to cure and will result in immediate termination of the automatic stay upon filing of an Affidavit by Movants.

5. Nothing in this Order shall preclude Movants from filing another motion for relief from stay or from requesting a further hearing on the Motion.

6. The conditions in this order shall remain in effect for a period of two years from the date of entry of this order or until further order of the court, whichever is earlier.

# # #